UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALBERT TREGLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 4104 |
| | ) | |
| JO ANNE B. BARNHART, | ) | Judge Ruben Castillo |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Albert Tregler ("Tregler"), and Defendant, Jo Anne Barnhart, Commissioner of

the Social Security Administration ("Commissioner"), filed cross-motions for summary

judgment. The Administrative Law Judge ("ALJ") found that Tregler did not qualify as disabled

within the meaning of the Social Security Act ("the Act") because there were a significant

number of jobs within the national economy that he could still perform. The Appeals Council

denied review, and Tregler filed this appeal. For the foregoing reasons, we deny the

Commissioner's motion for summary judgment and reverse and remand this matter for

proceedings consistent with this opinion.

## RELEVANT FACTS

Albert Tregler is a forty-seven year old resident of Chicago. (R. 14, Admin. R. at 59.)

He lives in an apartment with a fifty-nine year old woman, Katie Charles, and her thirty-seven

year old son. (*Id.* at 94.) He also resides in a shelter periodically when he cannot pay rent on the

spare room he rents from Ms. Charles. (*Id.* at 115.) He has a high school diploma, and from

1981 until 1999, he worked at various times as a fueler, dockworker, laborer, merchandise

handler, and steel cutter. (*Id.* at 79, 107.) Tregler filed for disability benefits on July 24, 2002. (*Id.* at 11.) He alleges a disability onset date of February 1, 2000. (*Id.* at 59.)

## I. Medical Evidence

Tregler alleges that he suffers from blindness in his left eye, low vision in his right eye, headaches and depression. (R. 14, Admin. R. at 185.) The blindness in his left eye resulted from an accident that occurred in 1999 when he was struck in the left temple with a car jack. (*Id.* at 118.)

Tregler visited the Cook County hospital emergency room on March 8, 2001 complaining of soreness in his right eye and blindness in his left eye. (*Id.* at 12, 108.) He also reported a history of alcoholism, stating that he often drank himself to sleep. (*Id.* at 111, 115.) Visual acuity was 20/200 in his left eye and 20/80 in his right eye. (*Id.* at 174.) After this visit, he was referred to the Eye Clinic where he was examined by an ophthalmologist, Dr. Mark Buranosky, on September 18, 2001. (*Id.* at 12.) Dr. Buranosky determined that while Tregler has "an optic pallor from a traumatic injury to the left eye with no potential vision in the left eye," the right eye is "doing very well and would benefit from a pair of glasses." (*Id.* at 118.) Dr. Buranosky found that visual acuity in Tregler's right eye was 20/70 uncorrected. (*Id.*) Dr. Buranosky observed mild nuclear sclerotic lenticular changes in both eyes. (*Id.*) He also indicated that Tregler's visual field efficiency was 42 percent, and visual efficiency was 17.6 percent. (*Id.* at 121.)

On April 24, 2002, Tregler was examined by an optometrist at the Illinois Eye Institute of the Illinois College of Optometry. (*Id.* at 158.) He complained of blurred vision, double vision, headache, tears, eye pain, and itching. (*Id.* at 159.) He was diagnosed with optic atrophy secondary to trauma in the left eye and compound hyperopic astigmatism with presbyopia in the

right eye. (*Id.*) Tregler's visual acuity was 20/50 in the right eye, but the right eye significantly improved with a corrective lense. (*Id.* at 161.)

In September 2002, a licensed psychologist, Bridget Stafford, Ph.D., examined Tregler at the request of the Bureau for Disability Determination Services (an Illinois state agency). Tregler reported to Dr. Stafford that he was "depressed all the time, hearing voices all of the time and having flashes about when he was attacked." (*Id.* at 116.) Dr. Stafford concluded that Tregler's immediate memory was in the low average range, his recent memory was in the borderline to low average range, and that he could perform simple arithmetic. (*Id.* at 116.) His speech was coherent, although he appeared extremely depressed during the interview. (*Id.* at 115.) Dr. Stafford determined that if she had to diagnose Tregler after that meeting, her diagnosis would include alcohol abuse, possible depressive disorder, possible post-traumatic stress disorder, and visual problems. (*Id.* at 117.)

In October 2002, Donald E. Henson, Ph.D., a state agency psychologist, concluded that Tregler suffered from a depressive disorder and a substance addiction disorder. (*Id.* at 122.) He noted that Tregler was moderately limited in his ability to carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; interact appropriately with the general public; and get along with coworkers or peers without distracting them. (*Id.* at 137.)

Also in October 2002, Dr. B. Rock Oh, a state agency physician, determined that Tregler did not suffer from any exertional (such as lifting or carrying a certain amount of pounds), postural (i.e., climbing, balancing, stooping), or manipulative limitations (i.e., handling, feeling, reaching all directions). (*Id.* at 141-143.) Dr. Oh noted Tregler's visual limitations, but opined

that Tregler did not meet the disability requirements for Listing 2.03C[1] of the impairments listed at 20 C.F.R., Part 404, Subpart P, Appendix 1, because the objective findings did not support a "poor peripheral visual field in the right eye." (*Id.* at 148.) In February 2003, state agency physician Dr. Boyd E. McCracken reviewed the medical evidence and concurred with Dr. Oh's assessment. (*Id.* at 147.)

## II.   Hearing Testimony

The ALJ held a hearing on February 1, 2005. Tregler's testimony was very sparse and somewhat incoherent; consequently, much of the testimony was provided by his attorney. At the hearing, Tregler testified that he received a check from the state of Illinois every two weeks for taking care of an elderly woman with mental problems, a woman who is also his landlord (presumably Ms. Charles). (R. 14, Admin R. at 193-94.) He also briefly testified about his vision problems, specifically stating that he is blind in his left eye and has poor vision in his right eye. (*Id.* at 195.) Tregler's attorney, Arthur Stephens ("Stephens"), stated that medical records from 2000 until 2004 indicated that there has been some decrease in the visual acuity of Tregler's right eye with readings ranging from 20/30 to 20/50, but that this did not rise to listing level. (*Id.*) Nonetheless, Stephens concluded that Tregler is "totally blind" because his vision is 20/200 in the left eye and 20/50 or worse in the right eye. (*Id.*) Stephens also noted that Tregler suffered from "depression and chronic alcohol abuse, and mild impairment in terms of his functioning capabilities." (*Id.* at 196.)

The court's vocational expert, Thomas Dunleavy ("Dunleavy"), provided little insight

---

[1] In order to qualify as disabled under Listing 2.03C, the contraction of peripheral visual fields in the better eye has to be twenty percent or less visual field efficiency. 20 C.F.R. Pt. 404, Subpt. P, App. 1 Listing 2.02.

4

into how Tregler's disabilities affected his ability to work. The ALJ asked Dunleavy to consider whether "an individual of this Claimant's age and vocational background and with visual acuity of 20/30 in the right eye and is affectively [sic] blind in the other eye" would be precluded from every type of work. (*Id.* at 197.) Dunleavy felt that this type of analysis required a medical interpretation that he was not qualified to give.

At this point, the ALJ called Tregler back to testify as to how his disabilities affected him in order to aid the vocational expert in making his determinations. (*Id.* at 198.) Tregler testified that he could only see "plain darkness" out of his left eye and that he was "constantly walking into things." (*Id.* at 199.) He also admitted that he had prescription glasses, but he "put them down one time, ain't seen them since." (*Id.*) Tregler stated that he still could not see in spite of his glasses and that he still ran into things. (*Id.*) Tregler further testified that he did not have a driver's license and that he did not take public transportation because he had trouble judging distances, causing him to walk into people. (*Id.*)

The ALJ recalled Dunleavy to the stand and asked him about the requirements for an Illinois driver's license, to which Dunleavy testified that a person with vision in only one eye would have to have 20/40 in the good eye and side mirrors on the car. (*Id.* at 203.)

## III. The ALJ's Decision

The ALJ determined that Tregler was not disabled within the meaning of the Act.[2] To determine whether a claimant qualifies for benefits, the ALJ performs the familiar five step sequential analysis pursuant to 20 C.F.R. § 416.920:

---

[2]The final decision of the ALJ becomes the final decision of the Commissioner. *Cummings v. Sullivan*, 950 F.2d 492, 499 (7th Cir. 1991).

5

(1) whether "the claimant is performing substantial gainful work;"[3] (2) "if the claimant is not performing substantial gainful work, whether his impairment is severe;" (3) "if the claimant is not performing substantial gainful work and has a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, [whether] his impairment (or impairments) meets or medically equals a listed impairment;" (4) whether the claimant's impairment (or impairments) prevent him from doing past relevant work; and (5) "[e]ven if the claimant's impairment or impairments prevent him from performing past relevant work, [whether] other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors."

(R. 14, Admin. R. at 12.)[4] The ALJ found that while Tregler's impairments are "severe," they are not severe enough to "meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (Id. at 12.) The ALJ found that Tregler's visual acuity was not sufficient to meet or equal the severity of section 2.02 of the Listing of Impairments which directs a finding of disabled if the remaining vision in the better eye after best correction of 20/200 or less.

After considering the medical evidence, the ALJ concluded that Tregler's vision could be corrected to almost near normal, ranging from 20/25 to 20/50. (Id. at 13.) The ALJ further noted that Tregler had only a "mild degree of functional limitations for activities of daily living, social functions, concentration, persistence, and pace and no known episodes of decompensation." (Id.) The ALJ discussed Tregler's psychiatric exam by Dr. Stafford, finding that despite Tregler's statements that he was depressed all the time, hearing voices and having flashes about when he was attacked, Tregler "was oriented and in contact with reality and did not show any evidence of

---

[3]Substantial gainful activity is defined as work activity that "involves doing significant physical or mental activities . . . usually done for pay or profit, whether or not a profit is realized." 20 C.F.R 416.972

[4]The ALJ skipped step one in his analysis, but Mr. Tregler has not performed any substantial gainful activity since 1999. (R. 14, Admin. R. at 74.)

a thought disorder." (*Id.*)  Based on these findings, the ALJ held that Tregler would be capable

of performing work that did not require binocular vision (sight in both eyes). (*Id.*)  This finding

precluded Tregler from returning to his past relevant work, which required binocular vision;

however, the ALJ determined that there are a significant number of jobs in the national economy

that Tregler could perform given his age, education, past relevant work experience, and residual

functioning capacity.' (*Id.* at 13-14.)

## LEGAL STANDARDS

A district court reviews the ALJ's decision to deny benefits to determine whether it was

supported by substantial evidence or is the result of an error of law. *Lopez v. Barnhart*, 336 F.3d

535, 539 (7th Cir. 2003).  Substantial evidence means "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Clifford*, 227 F.3d at 869.  In our

review of the ALJ's decision, we will not "reweigh evidence, resolve conflicts, decide questions

of credibility, or substitute [our] own judgment for that of the Commissioner." *Lopez*, 336 F.3d at

539

## ANALYSIS

### I.   The ALJ's Step Three Findings

Tregler argues that the ALJ failed to evaluate his impairments under the proper listing.  In

---

[5]"'Residual functional capacity' is that which a claimant can still do despite her physical and mental limitations. The ALJ considers the claimant's ability to lift weight, sit-stand, walk, push-pull, etc., in reaching this determination. The claimant's residual functional capacity is used to determine her ability to engage in various levels of work (sedentary, light, medium, heavy, or very heavy)." *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (internal citations omitted).

his opinion, the ALJ evaluated Tregler's impairments under Listing 2.02[6] and found that Tregler did not meet the requirements of the listing because the vision in his better eye after best correction is better than 20/200 or less. Tregler argues that the appropriate listing was 2.04, which states that "the visual efficiency of the better eye after best correction is 20% or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1. As evidence in support of this Listing, Tregler refers to his examination by Dr. Buranosky, who concluded that Tregler's visual efficiency was 17.6%, which meets Listing 2.04's requirement of 20% of less. (R. 16, Pl.'s Mot. for Summ. J. at 9.)

The Commissioner argues that Tregler cannot establish that he satisfied the requirements of Listing 2.04 because Dr. Oh, an optometrist for the state who examined Tregler, opined that the objective findings did not support the poor peripheral visual field indicated in Dr. Buranosky's report. (R. 18, Def.'s Mot. for Summ. J. at 8.) The ALJ, however, failed to even consider Listing 2.04 and the fact that Dr. Buranosky's report contradicted Dr. Oh's findings. Although the ALJ is not required to discuss his reasons for rejecting every piece of evidence, he must discuss the claimant's evidence that contradicts the Commissioner's position. *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2001). The required level of articulation is heightened when there is conflicting evidence. *Hodes v. Apfel*, 61 F. Supp. 2d 798, 807 (N.D. Ill. 1999). In the instant case, the ALJ does not discuss the conflicting evidence. Because there is evidence in the record that supports a 2.04 Listing, the ALJ was required to address it. "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004). The ALJ's failure to

---

[6] Listing 2.02 requires that "[r]emaining vision in the better eye after best correction is 20/200 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1 Listing 2.02.

properly conduct step three analysis is reversible error. *See id.* at 670.

## II.    The ALJ's Step Five Findings

Social Security Regulation 83-14 requires that:

> whenever a vocational resource is used [as in this case] and an individual is found
> to be not disabled, the [ALJ's] determination or decision will include (1) citations
> of examples of occupations/jobs the person can do functionally and vocationally
> and (2) a statement of the incidence of such work in the region in which the
> individual resides or in several regions of the country.

*Mitchell v. Barnhart*, 03 CV 12, 2003 U.S. Dist. LEXIS 26766, 20 (N.D. Ind. August 29, 2003).

Social Security regulations are binding on the Social Security Administration. *Prince v. Sullivan*,

933 F.2d 598, 602 (7th Cir. 1991). In the instant case, the ALJ concluded that Tregler could not

perform his past relevant work, but "there are a significant number of jobs in the national

economy that claimant can perform given his age, education, past relevant work experience, and

residual functional capacity." (R. 14, Admin. R. at 14-15.) However, the ALJ does not list any

specific occupations that Tregler could perform. The failure to do so is reversible legal error,

requiring remand. *See Prince*, 933 F.2d at 603 ("Although this court reviews the ALJ's

determination for substantial evidence, we are not in a position to draw factual conclusions on

behalf of the ALJ. . . . Until the Social Security Administration revokes . . . [SSR 83-14] we will

hold the ALJs to the requirements set out in that ruling by the Secretary [Commissioner]");

*Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980) ("When the Secretary [Commissioner] . .

. commits an error of law, reversal is, of course, warranted irrespective of the volume of evidence

supporting the findings"); *Mitchell*, 2003 U.S. Dist. LEXIS 26766 at *23-24 (remanding after the

ALJ failed to identify any occupations that claimant could perform).

The testimony of the vocational expert does little to shed light on this matter. Dunleavy testified only that Tregler might qualify for a driver's license, but he says nothing about the type of employment Tregler could undertake in spite of his impairments. (*Id.* at 201.) When directly asked to consider the employment possibilities for someone of Tregler's age, vocational background, and visual impairments, Dunleavy stated that he could not comment because he is "not a doctor" and theoretically "can't make a medical interpretation." (*Id.* at 197.) Therefore, we hold that the ALJ committed legal error when he failed to list any occupations that Tregler could perform despite his impairments.

## III. The ALJ's Credibility Determination

Tregler claims that the ALJ failed to make a credibility determination in accordance with Social Security Ruling 96-7p, which requires that the ALJ articulate:

> specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

As the Seventh Circuit has noted, 20 C.F.R. § 404.1529, Social Security Ruling 96-7p, and numerous Seventh Circuit decisions, taken together, "require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005). In this case, the ALJ simply stated that "the undersigned finds claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision" but he fails to set forth any reasons in the

body of the decision. (R. 14, Admin. R. at 14.)

"The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. Thus, an ALJ's conclusion is afforded great deference so long as the court finds that the ALJ followed proper procedures in making his or her determination." *Vice v. Barnhart*, 2004 U.S. Dist. LEXIS 25364, 42-43 (N.D. Ill. 2004) (*citing Keys v. Barnhart*, 347 F.3d 990 (7th Cir. 2003)) (internal citations omitted). This Court finds that the ALJ did not follow the proper procedure in discrediting Tregler's testimony because the ALJ does not cite to any evidence in the record to support his conclusion. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (finding that the ALJ failed to provide an adequate explanation for his credibility determination where the ALJ dismissed claimant's description of his limitations in a single sentence).

## CONCLUSION

Under the applicable legal standards, we must deny the Commissioner's motion for summary judgment. (R. 18-1.) For the reasons stated above, we reverse the ALJ's decision and remand this case for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). The Court directs the Clerk to enter judgment in favor of Tregler and against the Commissioner.

ENTERED:

Judge Ruben Castillo
United States District Court

**Dated:** February 6, 2006